THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL VASSER, Defendant-Appellant.

First District (2nd Division)   No. 1—99—1892

Opinion filed May 21, 2002.

COUSINS, J., dissenting.

Rita A. Fry, Public Defender, of Chicago (Eileen T. Pahl, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Katherine Blakey Cox, Assistant State's Attorneys, and Mary Anna Planey, law clerk, of counsel), for the People.

JUSTICE CAHILL delivered the opinion of the court:

Following a bench trial, defendant Michael Vasser was found guilty of felony theft of a gas station where he was employed. He was sentenced to 18 months' probation. On appeal, defendant argues that he was: (1) denied effective assistance of trial counsel; (2) prejudiced by the admission of other crimes evidence; (3) prejudiced by the admission of the owner's testimony regarding past robberies at the store; and (4) not proven guilty of felony theft beyond a reasonable doubt. We affirm.

The State called three witnesses at trial: Claude Jones, Officer Carl Turner and Detective Frances Heslin. Claude Jones was the owner of the gas station. The food shop at the gas station was open 24 hours, but from approximately midnight to 6 a.m. the front door was locked and business was conducted through a window. The door to the food area was locked with an electronic switch. The safe for the store was behind a counter and underneath the cash register. The safe weighed about 300 pounds. When a cashier accumulated more than $350, the cash was placed in the safe. The security camera recorder at the station had been broken for months before April 1998.

Claude Jones testified that he hired defendant as a cashier around February 1998. On April 19, 1998, defendant was scheduled to work the night shift from midnight to 8 a.m. Jones himself had worked until 6 or 7 p.m. the night before. That morning around 6 a.m., Jones received a call at his home from defendant. Defendant told Jones that the store had been robbed and someone had taken the safe. Jones told defendant to call the police. When Jones arrived at the gas station around 7 a.m., the police were already there.

Jones estimated that the safe contained approximately $5,000. Jones said the gas station had been robbed about 10 times in 13 years. He was present for six of the robberies and the safe had never been taken. On cross-examination, defense counsel asked Jones to confirm that he had no problems with defendant. Jones denied this and said he had fired defendant in the past because of missing items, but rehired him as a favor to defendant's father. Over defense objection, Jones also testified that defendant returned to the store after the robbery. Jones said that he found drugs in the rafters of the store and called the police to take them away after defendant's arrest in this case.

Officer Carl Turner testified that, when he responded to a call about an armed robbery at a gas station around 7 a.m. on April 19, 1998, he saw defendant sitting behind the counter, holding his head. Defendant told Turner that three unknown black men wearing gloves entered the store, brandishing weapons. Defendant told Turner that,

while two of the men grabbed him, the third man carried the safe to a car. Turner testified that defendant told him that the men struck him in the face and on his head before they left in a 1996 green Chevy. Turner did not notice red marks or bruises on defendant's head or body, but defendant complained of a severe headache and appeared sluggish. Turner called an ambulance. Defendant was taken to the hospital for treatment.

Detective Frances Heslin testified that he conducted the follow-up investigation of the robbery. When Heslin arrived at the gas station on April 19, 1998, he interviewed Jones and defendant. Defendant told Heslin that two people robbed him and that they drove a "wreck." However, the original police report showed that defendant told the first responding officer that three people robbed him and that they drove a green vehicle. Heslin testified that he became suspicious because of these inconsistencies.

The trial judge then questioned Heslin about Heslin's suspicions. Heslin testified that he was suspicious because of two inconsistencies in defendant's statements and that the defendant did not appear to be truthful. The original report showed that defendant said three men were involved and that they drove a green Chevy. But defendant told Heslin there were two offenders in a red vehicle.

Heslin further testified that he read defendant his *Miranda* rights from a preprinted card and took him to the Area Two police station for further questioning. As Heslin placed defendant in an interview room at the station, defendant gave him a piece of paper with several telephone numbers. Defendant said that one of the numbers was for "Dre" and that "Dre" was one of the men who had robbed defendant. Heslin determined that one of the numbers belonged to Mondre Vining, who was nicknamed "Dre." Heslin locked defendant in the interview room while he tried unsuccessfully to locate Vining.

About two hours later, Heslin returned to the interview room and advised defendant that his *Miranda* rights still applied. Heslin pointed out the inconsistencies in defendant's statements. Defendant said he wanted to tell Heslin the truth. Defendant told Heslin that Vining approached him about staging a robbery. Defendant was reluctant. But when he was approached again, defendant agreed to go along because he was tired of doing household chores and wanted money to move out of the house.

Defendant and Vining agreed that the robbery should take place sometime after 6 a.m. on April 19, 1998. On that date, Vining and another man came to the station. The other man waited outside. As defendant stood watching, Vining picked up the safe and placed it in the backseat of his car. Vining then came back inside the store and

punched defendant in the head. Heslin did not record defendant's statement.

After the State rested, defendant moved for a directed finding. The motion was denied. Defendant then testified in his own defense. He testified that he was a college student and lived at home with his parents. On April 19, 1998, around 6 a.m., Jones called and told defendant to unlock the front door for patrons on their way to church. Defendant testified that, when he turned his back to stack newspapers, two men walked up behind him and told him it was a "stick-up." One of the men, who had a pistol, pushed defendant and told him they were taking everything out of the store. They threatened to kill him if he did not open the register. Defendant used the "No sale" key to open the register and the men removed the cash from the register. One of the men then noticed the safe located underneath the register. While one man held a gun to defendant, the other man carried the safe out of the store. Defendant stated that, after they took the money, one of the men hit him on top of the head with the handle of the gun.

Defendant called his boss and then called the police. Defendant told Officer Turner that two men in a 1996 green Chevy robbed him and that one of them had a gun. Defendant was taken to a hospital and received stitches for his head injury. After treatment, defendant went home. He testified that Jones' nephew, Charles, came to his house and punched him. Defendant and his father then went to the gas station and met with Jones.

Defendant stated that Charles struck him again in the presence of Detective Heslin. Heslin told defendant that he wanted to take him to the police station for further questioning. Heslin also told defendant's father that he would take defendant home after questioning. Heslin then took defendant to the police station. Defendant was not handcuffed. At the station, defendant was in an interview room with Heslin for about 30 minutes. Heslin asked defendant to describe the men and their car. Then Heslin urged defendant to admit that he was part of the robbery and promised that he would only get probation. When defendant refused, Heslin slammed his hand on the desk and left defendant locked in the room for four to five hours. Defendant said that, during this time, he spoke to two other detectives who entered the room. An hour or so after the second conversation, defendant was taken for fingerprinting.

Defendant testified that he was not involved in the robbery and denied that he helped to set it up. On cross-examination, he also denied that he had been fired and rehired or that he had other problems on the job. He further denied knowing Mondre Vining or that he ever gave Detective Heslin a piece of paper with telephone numbers belonging to "Dre."

The parties stipulated that, if called to testify in rebuttal, Heslin would state that defendant never told him that Charles punched him at his house or at the gas station. Heslin would also testify that defendant admitted that he participated in the theft.

The trial court found defendant guilty of felony theft and sentenced him to 18 months' probation. Defendant appeals.

Defendant first argues that his trial counsel was ineffective in three ways: (1) he failed to file a motion to suppress defendant's statements on the ground that he was arrested without probable cause; (2) he elicited damaging evidence on cross-examination that defendant had been fired from his job; and (3) he failed to object to alleged hearsay testimony about the amount of money in the safe.

■ Claims of ineffective assistance of counsel are evaluated under the familiar standards set out in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). *People v. Coleman*, 168 Ill. 2d 509, 523, 660 N.E.2d 919 (1995). Under *Strickland*, a defendant is required to show that: (1) counsel's performance was deficient or fell below an objective standard of reasonableness; and (2) defendant suffered prejudice as a result of counsel's deficient performance. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. The court need not decide whether counsel's performance was deficient if it decides that the defendant suffered no prejudice from the alleged errors. *People v. Foster*, 168 Ill. 2d 465, 475, 660 N.E.2d 951 (1995). Prejudice is shown when there is "a reasonable probability that, but for [counsel's ineffectiveness], his sentence or conviction would have been reversed." *People v. Mack*, 167 Ill. 2d 525, 532, 658 N.E.2d 437 (1995).

Defendant first contends that counsel was ineffective when he failed to move to suppress defendant's statement because he was arrested without probable cause.

We first consider the State's contention that it is inappropriate for this court to review the issue of probable cause because there was no suppression hearing conducted and the State might have presented further evidence to establish probable cause if required to do so.

The State argues that, where defense counsel has failed to file a motion to quash arrest or suppress evidence, a reviewing court cannot be confident that it has before it all the facts surrounding the search or seizure. The State argues that it may be unable to present evidence at trial justifying an arrest or search because evidence supporting probable cause for an arrest or search may be irrelevant or inadmissible at trial. See *People v. McCray*, 273 Ill. App. 3d 396, 653 N.E.2d 25 (1995); *People v. Singletary*, 273 Ill. App. 3d 1076, 652 N.E.2d 1333 (1995).

We agree that in some cases the trial record is insufficient to as-

sess the validity of an arrest or search when a defendant challenges his trial counsel's failure to file a motion to quash arrest or suppress evidence. "[T]he prosecution is ordinarily not required to make proof of the reasonableness of the seizure of evidence that it introduces unless that question is raised by a defense motion to suppress." *People v. Mitchell*, 78 Ill. App. 3d 851, 853, 397 N.E.2d 569, 570 (1979). Where the record is uncertain, "[w]e cannot say what the full evidence might have been had a defense motion to suppress required the State to justify the search and seizure." *Mitchell*, 78 Ill. App. 3d at 853. In such a case, "we will not speculate as to whether the admission of evidence was plain error on the basis of an incomplete record." *People v. Calderon*, 101 Ill. App. 3d 469, 476, 428 N.E.2d 571, 575 (1981).

But here, we need not reach the reviewability issue because we find the evidence at trial sufficient to establish a finding of probable cause. Probable cause exists when facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable person's belief that the person to be arrested has committed an offense. *People v. Tisler*, 103 Ill. 2d 226, 236-37, 469 N.E.2d 147 (1984). This analysis is based on practical and common-sense considerations and requires an examination of the probabilities. *People v. Moody*, 94 Ill. 2d 1, 7-8, 445 N.E.2d 275 (1983). Although police officers need not possess evidence sufficient to convict, something more than a mere "hunch" or suspicion is required. *People v. Ellis*, 131 Ill. App. 3d 639, 642, 476 N.E.2d 22 (1985).

Here, Heslin testified that the following inconsistent statements by the defendant aroused his suspicions at the gas station: (1) defendant first reported that two men held him as a third carried out the safe but later said that only two men robbed him; and (2) defendant first told Officer Turner that the perpetrators drove off in a green Chevy but later told Officer Heslin that it was a "wreck" or red car. Heslin testified that he became aware of a third inconsistency in defendant's story once at the police station and before defendant was locked in the interview room. Officer Heslin testified that, once at the station:

> "As I was placing Mr. Vasser in an interview room, he handed me a piece of paper with several telephone numbers.
>
> I asked him what this was and he stated it was telephone numbers of Dre and that Dre was one of the guys that robbed him."

Defendant had said earlier that the perpetrators were three unknown black men. Defendant relies on *People v. Reynolds*, 94 Ill. 2d 160, 445 N.E.2d 766 (1983), to argue that mere inconsistent statements do not establish probable cause for arrest.

*Reynolds* involved a theft and burglary where a police officer stopped a station wagon pulling a trailer with inoperative taillights. As the officer approached the vehicle, he noticed several cartons in the trailer with the word "Magnavox" printed on them. When he questioned the three occupants of the vehicle about where they had acquired the equipment, their responses differed, they could not produce bills for the merchandise, and they were unable to identify their destination. When the officer ran identification checks on the vehicles and the occupants, there were no warrants on the occupants and the trailer was registered to a television store. At the officer's request, a police car drove by the store and reported that it appeared secure. *Reynolds*, 94 Ill. 2d at 163-64. The officer then asked the defendants to follow him to the police station. About 15 minutes after they arrived at the station, the owner of the television store appeared and said that the defendants did not have permission to possess the trailer or its contents. *Reynolds*, 94 Ill. 2d at 164.

■ The court held that the defendants were under arrest when the officer asked them to follow him to the station because he testified that he would not have permitted them to leave because of their defective taillight. *Reynolds*, 94 Ill. 2d at 165. Our supreme court also affirmed the lower court's decision to allow the defendants' motion to suppress evidence seized at the time of arrest for lack of probable cause. In assessing whether the inconsistent statements that initially aroused the officer's suspicions established probable cause, the court observed:

> "[T]he probable-cause test is a compromise for accommodating the 'often opposing interests' of privacy and law enforcement, and there is good reason for striking the compromise somewhat on the side of privacy where it is uncertain whether any crime occurred." *Reynolds*, 94 Ill. 2d at 166, quoting *People v. Lippert*, 89 Ill. 2d 171, 179-80, 432 N.E.2d 605 (1982).

See also *People v. Barlow*, 273 Ill. App. 3d 943, 952, 654 N.E.2d 223 (1995) (probable cause to arrest defendant did not exist where there was no indication that police had physical evidence to link defendant to the crime and any discrepancies in defendant's initial statement were unknown at the time of arrest).

■ An arrest has occurred when a reasonable person, innocent of any crime, would have considered himself or herself arrested or not free to leave. *Michigan v. Chesternut*, 486 U.S. 567, 573, 100 L. Ed. 2d 565, 572, 108 S. Ct. 1975, 1979 (1988); *People v. Holveck*, 141 Ill. 2d 84, 95, 565 N.E.2d 919 (1990).

> "The factors to consider include the time, place, length, mood, and mode of the interrogation; the number of police officers present;

any indicia of formal arrest or evidence of restraint; the intention of the officers; the extent of the officers' knowledge; the focus of the officers' investigation [citation]; the subjective belief of the detainee concerning his arrest status [citation]; any statement or nonverbal conduct by the police indicating that the detainee was not free to leave [citation]; and whether the detainee was told that he was free to leave or that he was under arrest." *People v. Reynolds*, 257 Ill. App. 3d 792, 799, 629 N.E.2d 559, 564 (1994).

■ Here, defendant was advised of his *Miranda* rights and taken to the police station for questioning. There is no evidence in the record that defendant was placed under arrest before he accompanied Heslin to the police station. Defendant testified that he was never handcuffed and went "on his own" to the police station with Heslin. Although Heslin testified that he was suspicious of defendant after his first interview with him at the gas station—before he took defendant to the police station—Heslin did not confine defendant in the locked interview room until defendant gave him the name of one of the perpetrators. Heslin, when he locked the door, had just received the third piece of inconsistent information to add to the two pieces of inconsistent information defendant gave him earlier. The third piece of information, the name of one of the perpetrators, is, we believe, decisive in a probable cause analysis. Under the circumstances, we find that defendant was placed under arrest when he was confined in the locked interview room.

■ The failure to file a motion to suppress is not *per se* ineffective assistance of counsel. *People v. Morris*, 229 Ill. App. 3d 144, 157, 593 N.E.2d 932, 941 (1992). "Whether or not a motion to suppress should be filed in a criminal case is a matter of trial tactics and has little bearing on competency of counsel." *People v. Peterson*, 248 Ill. App. 3d 28, 38, 618 N.E.2d 388, 397 (1993). Here, where probable cause to arrest existed before defendant was deprived of his freedom to leave the police station, defendant was not prejudiced by defense counsel's failure to file a motion to suppress.

■ Defendant next contends that he was denied effective assistance because his counsel elicited damaging testimony from Jones that defendant had been fired because of missing items in the store. The following colloquy occurred during the cross-examination of Jones:

"Q. In the time that Michael worked for you, there were no problems with his employment; is that correct?

A. That's not correct.

Q. He showed up to work on time?

A. He showed up to work on time but he had a lot of problems at work. When he came, some items [were] missing.

Q. You never called the police about any particular items being missing, did you?

A. No, it is not our policy to call the police when an employee is missing items.

Q. In fact, he still worked for you even though items were missing?

A. I fired him and his father asked me to rehire him."

We note that several of the answers unfavorable to defendant included information not solicited by the question. Defendant cites to no case where counsel has been held to be ineffective for failure to anticipate the unresponsive answers of a hostile witness. Effective counsel is not required to be clairvoyant. We also note that, during defendant's cross-examination, he denied that he was ever fired or rehired by Jones. The record reveals that, after receiving an unfavorable answer from Jones, counsel sought to discredit Mr. Jones' testimony by showing that he never reported defendant's alleged conduct to the police, could not remember when the incidents occurred and had no recollection of what items were missing. In our view, counsel's performance did not fall below an objective standard of reasonableness on this issue. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

■ Finally, defendant argues that he received ineffective assistance because counsel failed to object to alleged hearsay testimony concerning the amount of money in the safe. However, the testimony is more about knowledge than about hearsay:

"Q. [Prosecutor]: Do you recall—do you know approximately how much money was in that safe when you left?

A. [Jones]: It was approximately $5,000 in the safe."

Hearsay evidence is in-court testimony of an out-of-court statement, which is offered to establish the truth of the matter contained in the statement. *People v. Tharpe-Williams*, 286 Ill. App. 3d 605, 609, 676 N.E.2d 717 (1997). The best evidence rule states a preference for the production of original documentary evidence when the contents of the documentary evidence are sought to be proved. *Tharpe-Williams*, 286 Ill. App. 3d at 610. However, the best evidence rule does not apply when a party seeks to prove a fact that has an existence independent of documentary evidence. *Tharpe-Williams*, 286 Ill. App. 3d at 610.

Jones testified on direct examination that the safe contained approximately $5,000 when he left the store. Defendant claims that, since Jones worked 12 hours before the robbery took place, he could not have known whether the safe contained $5,000 because the attendant on duty, defendant, could have added more cash to the safe. Defendant concludes that Jones must have been relying on information

from other store clerks or the register receipts, and his testimony therefore violated the hearsay and best evidence rules. We disagree. It appears from the record that Jones' testimony was based on his personal knowledge and did not depend on anyone else's knowledge or written documentation for support. He also qualified his answer by stating that there was "approximately" $5,000 in the safe when he left the store. Again, in our view, counsel's performance did not fall below an objective standard of reasonableness for failing to object to Jones' testimony. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

■ Next, defendant contends that he was denied a fair trial because Jones' testimony linked him to drugs found in the gas station. Evidence of other crimes is not admissible to show the defendant's disposition or propensity to commit crime. *People v. Lehman*, 5 Ill. 2d 337, 342, 125 N.E.2d 506 (1955). When evidence of other crimes is offered, the trial judge must weigh its probative value against its prejudicial effect and may exclude the evidence if its prejudicial effect substantially outweighs its probative value. *People v. Illgen*, 145 Ill. 2d 353, 365, 583 N.E.2d 515 (1991).

In this case other crimes evidence was introduced during the State's redirect examination of Claude Jones, the gas station owner.

"Q. [Prosecutor] After this incident occurred in April of '98, was there a time where the defendant came back to the store?

A. [Jones] Yes, there was.

\* \* \*

Q. What happened when defendant came back to the store?

A. He asked my daughter could he go to our backroom of our store.

Q. Did your daughter allow him to?

MR. LIPSON [Defense counsel]: I will object.

THE COURT: Sustained. We're talking about hearsay. Sustained.

\* \* \*

Q. [Prosecutor] After this incident occurred in April of '98, was there a time where the defendant came back to the store?

A. Yes.

Q. Did you find something in the rafters of the store?

A. Yes I did.

Q. What did you find?

A. I found some drugs in my store.

Q. Did you call the police and have the police take those drugs away?

A. Yes, I did.

MR. LIPSON: Objection, irrelevant, Judge.

MS. MARK [Prosecutor]: Nothing further.

THE COURT: Any other questions?

MR. LIPSON: No."

Before the trial court could respond to defense counsel's relevancy objection, the prosecutor stated that she had nothing further for the witness. Defense counsel failed to renew his relevancy objection and get a ruling from the court. Although the evidence linking defendant to the drugs was inadmissible, its admission was harmless error because there is nothing in the record to support a finding that it was considered by the court and materially affected the outcome of the case. The trial court did not refer to the testimony concerning the drugs during its decision. See *People v. Miszkiewicz*, 236 Ill. App. 3d 411, 427, 602 N.E.2d 1312 (1992) (in a bench trial, the judge is presumed to have only considered competent and admissible evidence).

■ Defendant also argues that he was prejudiced because the trial court admitted and relied on Jones' lay testimony concerning the profile of a typical armed robbery. Profile evidence usually involves a witness describing common practices, habits or characteristics of a group of people. *People v. Brown*, 232 Ill. App. 3d 885, 898, 598 N.E.2d 948 (1992). When unconnected to the particular defendant or the circumstances of the arrest, profile testimony improperly invades the province of the finder of fact and may impermissibly imply a propensity to commit crime. *Brown*, 232 Ill. App. 3d at 898 (testimony about common practices, habits and characteristics of drug dealers amounted to inadmissible profile evidence); *People v. King*, 248 Ill. App. 3d 253, 274-75, 618 N.E.2d 709 (1993) (testimony about defendant's match to sex offender profile was inadmissible); *In re B.J.*, 316 Ill. App. 3d 193, 200-01, 735 N.E.2d 1058 (2000) (upholding exclusion of testimony that defendant did not fit sex offender profile).

In this case, the following colloquy took place between the assistant State's Attorney and Jones:

"Q. Has that store ever been robbed before, Mr. Jones?

A. Yes.

Q. Approximately how many times in 13 years?

A. About 10 times in 13 years.

Q. In the 10 times that you had been robbed had anybody ever demanded to [haul] out a 300 pound safe?

A. No.

Q. How had you been robbed?

A. The person has a gun and asked for the cash in the register.

\* \* \*

Q. Are these robberies where you personally were the victim of?

A. Not all of them. On six of them I was.

Q. And the robberies that you personally were the victim did the robber usually demand the money straight out of the cash register?

A. They demanded money out of the register."

Unlike *Brown*, *King* or *B.J.*, where witnesses offered profile testimony, Jones did not testify to the common practices, habits, or characteristics of armed robbers in general. Rather, he testified about specific robberies of his store. The court did not characterize or refer to Jones' testimony as profiling a typical robbery. The court observed:

> "Mr. Jones talked with certainty about how the store operated and the security measures he took inside the store. He acknowledged that the store had been robbed about 10 times in the past 14 years he had been operating the store, and he established security measures to keep robbers away from the areas where the money was located."

The court commented on the store's past robberies to highlight the security measures taken by Jones. We conclude that defendant was not prejudiced by Jones' testimony relating to past robberies.

■ Finally, defendant contends that he was not proven guilty of felony theft beyond a reasonable doubt. Defendant argues that there were no eyewitnesses or store videotape to show that he participated in the theft. Defendant contends that his presence at the store during his working shift was not sufficient proof that he assisted the men who took the safe. Defendant argues that his innocence is supported because he did not flee the scene but immediately called his employer and the police to report the incident. Defendant alleges that there was no evidence showing that he received any proceeds from the safe. Defendant claims that Heslin's testimony that defendant gave him the name and telephone number of "Dre" did not corroborate defendant's participation in a scheme to fake a robbery because it would not be unusual for a store clerk to have a passing acquaintance with a customer who lived next door to the store. Finally, defendant asserts that Heslin's testimony about defendant's incriminating statement was unconvincing because it was not recorded.

We must consider whether the evidence could reasonably support a finding of guilt beyond a reasonable doubt when a defendant challenges the sufficiency of the evidence against him. *People v. Howery*, 178 Ill. 2d 1, 38, 687 N.E.2d 836 (1997). The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Campbell*, 146 Ill. 2d 363, 374, 586 N.E.2d 1261 (1992). In a bench trial, it is the responsibility of the trial judge to determine the credibility of witnesses, weigh evidence and draw reasonable inferences therefrom and resolve conflicts in the evidence. *People v. Slim*, 127 Ill. 2d 302, 307, 537 N.E.2d 317 (1989). We will not substitute our judgment for that of

the fact finder on questions involving the weight of evidence or the credibility of witnesses (*Campbell*, 146 Ill. 2d at 375) and will not reverse a criminal conviction unless the evidence is so improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt (*Howery*, 178 Ill. 2d at 38).

A charge of theft may be established by proving that the accused knowingly exerted unauthorized control over the property of another, with the intent to permanently deprive the owner of its benefits. *People v. Furby*, 138 Ill. 2d 434, 447, 563 N.E.2d 421 (1990); 720 ILCS 5/16—1(a) (West 1998). If the value of the property taken exceeds $300, the offense is elevated from misdemeanor to felony theft. 720 ILCS 5/16—1(b)(4) (West 1998). "When a charge of theft of property exceeding a specified value is brought, the value of the property involved is an element of the offense to be resolved by the trier of fact as either exceeding or not exceeding the specified value." 720 ILCS 5/16—1(c) (West 1998).

Applying these principles here, we conclude that the evidence was sufficient to sustain defendant's conviction. On April 19, 1998, defendant was working the midnight to 8 a.m. shift alone at the gas station owned by Jones. Jones had worked the night before from 8 a.m. to 6 or 7 p.m. When more than $350 accumulated in the cash register, the cashier was to deposit the money in a safe located underneath the register. Jones testified that the safe contained approximately $5,000 on the night of the theft. Defendant also told Officer Turner that there was approximately $5,000 in the safe before the theft. The entire safe was removed from the store on the night in question.

Defendant argues that evidence outside of defendant's statements did not establish the *corpus delicti* for a felony theft. Proof of *corpus delicti* requires proof that: (1) a crime was committed; and (2) it was committed by the person charged. *People v. Lambert*, 104 Ill. 2d 375, 378, 472 N.E.2d 427 (1984). The *corpus delicti* cannot be proved by the defendant's confession alone. *Lambert*, 104 Ill. 2d at 378. Rather, there must be some independent evidence or corroborating evidence outside of the confession which tends to establish that a crime occurred. *Lambert*, 104 Ill. 2d at 378-79.

In this case, defendant claims that the State failed to prove that the value of the property taken exceeded $300, which is an element of the offense of felony theft. Defendant asserts that, aside from Jones' alleged hearsay concerning the contents of the safe, the only other evidence that the safe contained $5,000 came from Officer Turner's testimony that defendant told him that was the amount in the safe. We disagree. We already found that Jones' testimony came from his personal knowledge and was not hearsay.

We believe there was sufficient evidence to convict defendant. Defendant admitted to Heslin his participation in the offense charged. Although defendant later denied his involvement during the trial, it was the trier of fact's function to resolve the conflicting testimony. *Campbell*, 146 Ill. 2d at 375. In this case, the trial judge was free to credit the testimony of the investigating officers, to accept as true their accounts of defendant's interrogations and to believe the contents of defendant's oral statement. Viewing all the evidence in the light most favorable to the prosecution, we cannot say that the evidence was so improbable or unsatisfactory as to create a reasonable doubt of defendant's guilt. *Howery*, 178 Ill. 2d at 38.

We affirm the judgment of the trial court.

Affirmed.

McBRIDE, J. concurs.

JUSTICE COUSINS, dissenting:

On appeal, defendant contends that he was arrested without probable cause and that trial counsel's failure to file a motion to quash arrest and suppress defendant's statement constituted ineffective assistance of counsel. I agree.

The defendant also contends, as the majority writes (331 Ill. App. 3d at 682), "that mere inconsistent statements do not establish probable cause for arrest." In this regard, the defendant's statement is a restatement from the decision proclaimed by the Illinois Supreme Court in *People v. Reynolds*, 94 Ill. 2d 160, 166, 415 N.E.2d 766 (1983).

In order to establish probable cause for arrest, facts and circumstances within the arresting officer's knowledge must be sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense. *People v. Lippert*, 89 Ill. 2d 171, 178, 432 N.E.2d 605 (1982). Something more than a mere "hunch" or suspicion is required. *People v. Ellis*, 131 Ill. App. 3d 639, 642, 476 N.E.2d 22 (1985). The majority in the instant case predicates the decision that probable cause existed to warrant the belief that defendant was a person who had committed the offense upon three inconsistent statements made by the defendant to the officers.

The third inconsistent statement which the majority writes is decisive occurred when the defendant handed Officer Heslin a piece of paper with several telephone numbers and, according to Heslin, stated that "it was telephone numbers of Dre and that Dre was one of the guys that robbed him." According to the police report, defendant had

previously stated to the officers who wrote the report that he didn't know who robbed him. The majority writes (331 Ill. App. 3d at 684): "The third piece of information, the name of one of the perpetrators, is, we believe, decisive in a probable cause analysis. Under the circumstances, we find that defendant was placed under arrest when he was confined in the locked interview room." No precedent is cited by the majority to support the decision.

In my view, the majority has erred because no probable cause existed to sanction locking the defendant up while the officers sought for two hours to locate Mondre Vining, a man whom the defendant stated robbed him. Therefore, I dissent.

On another issue in this appeal, I disagree with the State's contention that it is inappropriate for this court to review the issue of probable cause because there was no suppression hearing conducted below and the State might have presented further evidence to establish probable cause if required to do so. See *People v. Stewart*, 217 Ill. App. 3d 373, 577 N.E.2d 175 (1991) (defense counsel's failure to move to suppress cocaine found in defendant's possession following his arrest was ineffective assistance of counsel); *People v. Odom*, 71 Ill. App. 2d 480, 218 N.E.2d 116 (1966) (defense counsel's failure to move to suppress defendant's confession as involuntary amounted to ineffective assistance).

*Stewart* is instructive. There, an officer observed defendant and another man exchange something on the sidewalk, but the officer admitted that he did not see what was transferred. As the officers approached in their squad car, the men fled. Defendant was apprehended on foot, handcuffed and a search revealed 17 bags of cocaine on his person. *Stewart*, 217 Ill. App. 3d at 375.

The reviewing court found the question of probable cause to be a "close one." *Stewart*, 217 Ill. App. 3d at 376. Since the officer did not see what was transferred, the court reasoned that police could not be certain that an innocent transaction had not occurred. The court noted that the defendant's only viable defense lay in contesting the propriety of his arrest. The court concluded that defendant did not receive effective assistance because defense counsel failed to move to suppress the cocaine and this undermined the confidence in the outcome. The court reversed defendant's conviction and remanded for consideration of a suppression motion, where the parties would be afforded the opportunity to present further evidence on this issue. *Stewart*, 217 Ill. App. 3d at 376.

In the instant case, Officer Heslin could not be certain that defendant was involved in the commission of a crime solely based on his inconsistent statements. The identification of Mondre Vining could

have confirmed that defendant was probably acquainted with a person whom he named as one of the perpetrators. However, this information does not furnish probable cause that defendant either committed the offense or was accountable for the offense. Inconsistent statements, without more, do not provide probable cause to arrest. *Reynolds*, 94 Ill. 2d at 166. In my view, counsel's failure to file a suppression motion undermines the confidence in the outcome. Therefore, defendant's conviction should be reversed and this cause should be remanded for consideration of a suppression motion, where the parties can be afforded the opportunity to present further evidence in this issue.

Again, I dissent.