**FIRST DIVISION**
September 16, 2008

No. 1-07-1737

| | | |
|---|---|---|
| NAZARIY PETRAKH, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff, | ) | Cook County. |
| | ) | |
| v. | ) | No. 07 M1 11809 |
| | ) | |
| ALVARO MORANO, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | Honorable |
| (Allison V. Smith, | ) | Pamela E. Hill Veal, |
| | ) | Judge Presiding. |
| Contemnor-Appellant.) | ) | |

JUSTICE GARCIA delivered the opinion of the court.

The contemnor, Allison Smith, an attorney, appeals from an order of the circuit court of Cook County finding her in direct criminal contempt of court. She contends, inter alia, that the evidentiary support for the contempt order was insufficient as a matter of law. Because no appellee's brief has been filed in this case, we consider this appeal under the principles of First Capitol Mortgage Corp. v. Talandis Construction Corp., 63 Ill. 2d 128, 133, 345 N.E.2d 493 (1976) (if, based on the record, appellant's brief demonstrates reversible error, judgment of circuit court subject to reversal even in the absence of appellee's brief).

The record shows that on March 8, 2007, Nazariy Petrakh filed a complaint against Alvaro Morano seeking compensation for

damage to Petrakh's truck from a vehicular collision between the parties.  On April 4, 2007, Smith, with her firm, filed a timely appearance and jury demand on Morano's behalf.  On the status date of May 17, 2007, a trial date of May 29, 2007, was set on Petrakh's complaint in a nonjury courtroom.  On May 22, 2007, Smith filed a motion to strike the trial date based on Morano's jury demand.

On May 24, 2007, Judge Hill Veal, presiding over the nonjury call, denied Morano's motion to strike the trial date.  Based on Smith's conduct in the courtroom, Judge Hill Veal entered a written order of detainment and direct criminal contempt of court against Smith and sentenced her to 14 days' incarceration.

Because the proceedings were not transcribed, Smith prepared a bystander's report in accordance with Supreme Court Rule 323(c) (210 Ill. 2d R. 323(c)).  In accordance with the procedure set out in Rule 323(c), the bystander's report was certified as an accurate report of proceedings and included in the record on appeal.[1]

_____

[1] The notice of Smith's motion to certify the bystander's report did not list Judge Hill Veal.  The parties served did not challenge the report and the motion to certify was titled "unopposed."  The bystander's report was certified by a different

Judge Hill Veal listed in 32 numbered paragraphs in her "Order of Adjudication Direct Criminal Contempt" her findings that Smith was in contempt of court.

We set out below the salient points in the contempt order and Smith's bystander report.

According to Smith, Morano's motion to strike was denied by the circuit court based on Judge Hill Veal's mistaken understanding that Smith had stated the case had already been transferred. In her findings, Judge Hill Veal listed, "11. The court explained to Atty. Smith that she stated that the case was transferred yet she could not provide any of the information requested." According to Smith, she sought to make clear that the transfer request was based on Morano's timely jury demand, which also served as the basis for her motion to strike the May 29, 2007, trial date. In her findings, Judge Hill Veal stated, "12. As she attempted to explain procedure to Atty. Smith she constantly interrupted despite the fact the court admonished her on several occasions about interrupting. 13. The court denied the motion and Atty. Smith demanded that I provide her with reasons."

According to Smith, after her motion was denied, she stepped

circuit court judge.

away from the bench to prepare a draft order. According to Judge Hill Veal, "16. Atty. Smith continued to argue with court. 17. The court asked Smith to step away from the bench. 18. Smith continued to talk and failed to step away from the bench. 19. The sheriff's deputy asked Atty. Smith to step away from the bench and as she proceeded to sit on the court bench, she was mumbling and continued to do so."

Both the bystander's report and the findings in the contempt order indicate that the first order prepared by Smith was not prepared in accordance with the caption of her motion to strike. "23. Atty. Smith stated that she asked for the case to be transferred and it was denied. 24. The court again asked Atty. Smith to prepare the order in accordance with the caption of her motion." According to Smith, Judge Hill Veal rejected the initial draft order she prepared because it indicated that both the written motion to strike and the oral motion to transfer were denied. Smith proceeded to prepare another draft order to reflect only the denial of the motion to strike. As Smith was preparing the second draft order, a deputy approached her and asked that she step into the hallway. Once she was in the hallway, the deputy informed Smith that she had been found in contempt of court, was placed in handcuffs by two other deputies and escorted directly to the Daley Center lockup.

The contempt order states, "25. Atty. Smith continued to argue with the court and failed to prepare the order in accordance with the caption of her motion. 26. Atty. Smith continued to be argumentative, she was told that she was going to be held in custody and the court asked the sheriff to take her into custody and have her held until 3:30pm for a hearing. 27. The sheriff proceeded to detain Atty. Smith. 28. The contemnor was disrespectful and held in contempt of court. 29. The conduct of the contemnor occurred in the presence of other individuals while the court was in open session. 30. The conduct of the contemnor was disrespectful, rude and insolent. 31. The contemnor's behavior impeded and interrupted the proceedings, lessened the dignity of the court and tended to bring the administration of justice in disrepute. 32. At the 3:30pm hearing, Atty. Allison Y. Smith failed to be remorseful and was unapologetic."

According to Smith, she remained in the lockup until 3:30 p.m., when she was escorted back to the courtroom. In the courtroom, Judge Hill Veal read from the "Order of Adjudication Direct Criminal Contempt," found Smith in contempt of court and sentenced her to 14 days in the Cook County jail. Smith became dizzy and ill; she was unable to breathe or respond to Judge Hill Veal when she asked whether Smith had anything to say. Before

Smith regained her composure, Judge Hill Veal stated Smith was unremorseful and left the bench. Smith suffered a panic attack; a few minutes later when Judge Hill Veal returned to the bench, she denied Smith's request to speak. Smith was transported from the Daley Center to the lockup at Cook County jail.

The following morning, at Cook County jail, Smith met with counsel from her firm, who informed her that she had been summoned back to court. Counsel had filed before Judge Hill Veal an emergency motion to purge the order of contempt. At the hearing on the emergency motion, Smith apologized to Judge Hill Veal for whatever she had done to offend. Judge Hill Veal refused Smith's apology; she cited Smith's "horrible" behavior, "mentioning that Ms. Smith had been biting her pen, walking back and forth in the courtroom and had slumped on the bench like a toddler." Judge Hill Veal did direct Smith to apologize to the courtroom deputy, which she did. Judge Hill Veal denied Smith's motion to vacate the contempt order and expunge the conviction from her record. Judge Hill Veal did reduce the sentence to time served and ordered Smith's immediate release.

In the only brief before us, Smith challenges the contempt order on five grounds; her first and dispositive contention is that there is insufficient evidence in the record to support the contempt order.

1-07-1737

## Analysis

Direct criminal contempt of court has been defined as conduct " ' "calculated to embarrass, hinder or obstruct [the] court in its administration of justice or derogate from its authority or dignity, thereby bringing the administration of law into disrepute." ' " People v. Simac, 161 Ill. 2d 297, 305, 641 N.E.2d 416 (1994), quoting People v. L.A.S., 111 Ill. 2d 539, 543, 490 N.E.2d 1271 (1986), quoting People v. Javaras, 51 Ill. 2d 296, 299, 218 N.E.2d 670 (1972). The exercise of the power to punish contempt is " 'a delicate one, and care is needed to avoid arbitrary or oppressive conclusions.' " Simac, 161 Ill. 2d at 306, quoting Cooke v. United States, 267 U.S. 517, 539, 69 L. Ed. 767, 775, 45 S. Ct., 390, 396 (1925). This is especially true "[w]here the conduct complained of is that of an attorney engaged in the representation of a litigant, *** [because] of the contentious role of trial counsel and *** her duty to zealously represent the client's interests. [Citations.] A vigorous, independent bar is indispensable to our system of justice. [Citation.] Therefore, if a contemnor can show that the conduct was a good-faith attempt to represent his or her client without hindering the court's functions or dignity, a finding of direct contempt will be reversed upon review. [Citation.]" People v. Griffith, 247 Ill. App. 3d 21, 23-24, 620 N.E.2d 1138 (1993).

1-07-1737

"Direct criminal contempt is contemptuous conduct occurring 'in the very presence of the judge, making all the elements of the offense matters within [her] own personal knowledge.' " Simac, 161 Ill. 2d at 306, quoting People v. Harrison, 403 Ill. 320-24, 86 N.E.2d 208 (1949). "Direct contempt is 'strictly restricted to acts and facts seen and known by the court, and no matter resting upon opinions, conclusions, presumptions or inferences should be considered.' " Simac, 161 Ill. 2d at 306, quoting People v. Loughran, 2 Ill. 2d 258, 263, 118 N.E.2d 310 (1954). Direct criminal contempt must be proved beyond a reasonable doubt. In re Marriage of Bartlett, 305 Ill. App. 3d 28, 31, 711 N.E.2d 460 (1999).

In this case, we first review the trial court's findings in its contempt order, without any consideration of the bystander's report, to determine whether Smith's purported conduct is properly the subject of a contempt finding. See People v. Tomashevsky, 48 Ill. 2d 559, 564, 273 N.E.2d 398 (1971) (" 'the law imposes *** [that] the order *** contain facts sufficient to show that the court was warranted in entering the order' "), quoting People v. Tavernier, 384 Ill. 388, 51 N.E.2d 528 (1943); People v. Griffith, 247 Ill. App. 3d at 23 (on review, record examined to "determine whether the trial court had jurisdiction to enter a contempt order").

The contempt order reflects the following acts by Smith. Smith challenged the trial court's denial of her motion to strike the nonjury trial date; Smith failed to step away from the bench after the Judge Hill Veal denied her motion; Smith continued to argue her point by demanding an explanation of the trial court's ruling. Finally, Smith challenged the trial court's determination that the language of the initial draft order was inaccurate based on the caption of the motion Smith had filed.

Preliminarily, we note a fundamental misunderstanding by the trial court regarding the status of the case. If the case had already been transferred as Judge Hill Veal believed Smith argued, there would be no reason to maintain a future trial date in the nonjury courtroom.[2] Whether the case had already been transferred or Smith was present to seek its transfer, there is no dispute a timely jury demand had been made and paid for. In either instance, the nonjury trial date of May 29, 2007, should have been stricken. Yet, unexplainedly, Judge Hill Veal denied Smith's motion to strike.

---

[2] Following Smith's release, a second motion to strike Morano's case from the nonjury trial call was filed and, on June 5, 2007, the case was transferred to the jury courtroom.

Judge Hill Veal's misunderstanding aside, the findings in her order of adjudication direct criminal contempt do not warrant the entering of the order of contempt of court. We see no basis to conclude that Smith's efforts were anything other than a good-faith representation of her client in the face of an unexplained (and unjustified) denial of her motion to strike the nonjury trial date. See Bartlett, 305 Ill. App. 3d at 32 (contemnor's comments may be viewed in light of erroneous trial court rulings). The factual findings by Judge Hill Veal do not reflect an intent on the part of Smith to disrespect or obstruct the court in its proceedings. See People v. Coulter, 228 Ill. App. 3d 1014, 1020-21, 594 N.E.2d 1157 (1992) (no proof that acts, allegedly the basis for the contempt order, "[were] calculated to embarrass, hinder, or obstruct a court"). The motion to strike was proper, which, as we noted, was subsequently granted. See Bartlett, 305 Ill. App. 3d at 31; People v. Bertelle, 164 Ill. App. 3d 831, 835, 510 N.E.2d 332 (1987) (while attorney's comments not condoned, comments not an adequate basis for contempt conviction especially following attorney's objection based on "unfair" ruling, trial court reversed itself on the ruling). We find Judge Hill Veal's conclusions that Smith was acting to embarrass the court, interfere with its proceedings or the administration of justice to be without sufficient support in

- 10 -

her findings.  See Bertelle, 164 Ill. App. 3d at 834-35.

We discern no substantial factual disagreement in the certified bystander's report, which is properly before us, with the findings by Judge Hill Veal.  The bystander's report reinforces our conclusion that Smith acted in good faith on behalf of her client.  Smith's conduct was no more than zealous representation of her client to have the May 29 trial date stricken and have the case transferred to the jury courtroom. Smith's conduct was aimed at clearing up Judge Hill Veal's misunderstanding as to where the case belonged.  See Bartlett, 305 Ill. App. 3d at 32 ("contemnor acting in good faith in an attempt to act as advocate for his client").

Reviewing courts have reversed contempt findings in cases where counsel have displayed conduct that is less clearly the product of good faith representation.  See People v. Miller, 51 Ill. 2d at 76, 78-9 (1972)) (counsel directed grimaces at the trial court and was improperly sarcastic and overzealous); Bertelle, 164 Ill. App. 3d at 835 (counsel twice referred to the trial court's rulings as "unfair"); Bartlett, 305 Ill. App. 3d at 30 (counsel failed to immediately step away from the bench in an effort to obtain rulings on his remaining requests for relief); Griffith, 247 Ill. App. 3d at 22-23 (defense counsel argued that the trial court "was not impartial and acted as a 'functionary of

the State, or a third prosecutor' ").

Accordingly, we reverse the order of direct criminal contempt and direct that the conviction be expunged from Smith's record. Based on our disposition, we need not address Smith's remaining contentions.

Reversed with directions.

CAHILL, P.J., specially concurs.

WOLFSON, J., concurs.

PRESIDING JUSTICE CAHILL, concurring:

I write separately to make an observation.

Nothing demeans the judiciary more than a frivolous and mean-spirited exercise of the contempt power. A judge who lunges for the contempt remedy at the first sign of perceived impertinence is not unlike the television cartoon judge who needs a gavel to control his courtroom. Both the contempt power and the gavel are seldom used by the judge who is sure-footed, and almost never used when interacting with a lawyer. Judges have an enormous range of remedies for dealing with impertinent lawyers, from the subtle to stern admonition. Contempt is always a last resort reserved for the most egregious behavior. Incarceration of a lawyer as a sanction is almost always an abuse of the contempt power and a signal that the judge who orders it has lost control of his courtroom and his temper. Based on the cold record, this case seems to fall into that category. We can only reverse. It is not in our power to fashion a remedy other than reversal, but had we the power to order a public apology, I would not hesitate to do so.

**REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT**

---

**NAZARIY PETRAKH,**
**Plaintiff,**
**v.**
**ALVARO MORANO,**
**Defendant**
**(Allison V. Smith,**
**Contemnor-Appellant.)**

---

**No. 1-07-1737**
**Appellate Court of Illinois**
**First District, First Division**
**Filed: Tuesday, September 16, 2008**

---

**JUSTICE GARCIA delivered the opinion of the court.**

**CAHILL, P.J., specially concurs.**
**WOLFSON, J. , concurs.**

---

**Appeal from the Circuit Court of Cook County**
**Honorable Pamela E. Hill Veal, Judge Presiding**

---

**For CONTEMNOR -**        **James K. Horstman**
**APPELLANT**              **Cray, Huber, Horstman, Heil & VanAusdal, LLC**
                          **303 W. Madison, Suite 2200**
                          **Chicago, Illinois 60606**