NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250712-U

NO. 4-25-0712

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 12, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| AARON JUSTICE SPENCER, | ) | Circuit Court of |
|     Petitioner-Appellant, | ) | Henry County |
|     and | ) | No. 25DN12 |
| JESSICA JUDITH DIAZ LOPEZ, | ) | |
|     Respondent-Appellee. | ) | Honorable |
| | ) | Colby G. Hathaway, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Presiding Justice Harris and Justice Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, holding petitioner failed to establish a reason why it should vacate his acknowledged stipulation and agreement to pay $3,500 of respondent's attorney fees.

¶ 2    The trial court entered an order dissolving the marriage of petitioner, Aaron Justice Spencer, and respondent, Jessica Judith Diaz Lopez, on June 11, 2025. The judgment incorporated a marital settlement agreement (MSA) providing, among other things, petitioner would pay $3,500 of respondent's attorney fees, an amount to which petitioner agreed in open court. On appeal, petitioner asserts the court abused its discretion by awarding attorney fees in the absence of a record of the time counsel spent on the case and asks us to vacate the MSA. We affirm.

¶ 3                     I. BACKGROUND

¶ 4    The parties married on January 8, 2025. On March 20, 2025, petitioner filed a *pro se* petition for dissolution of marriage. He listed a car loan as the only marital debt. Alicia D. Gieck

of the H.J. Dane Law Office entered her appearance for respondent on April 17, 2025. Respondent filed an answer the same day, which said no marital debt existed. Gieck signed all of respondent's filings and appeared on respondent's behalf.

¶ 5 On April 21, 2025, petitioner filed, among other things, "Petitioner's Motion for Entry of Partial Judgment on Contested Marital Debt." This filing included exhibits documenting the existence of the joint car loan.

¶ 6 On April 25, 2025, respondent filed an amended answer, in which she admitted the debt existed.

¶ 7 On April 28, 2025, petitioner filed a group 11 of documents, which included (1) "Petitioner's Motion in Opposition to Respondent's Motion to Amend Answer," (2) "Petitioner's Motion to Preclude Trial on Issues of Indemnification or Liquidation of Vehicle Asset," and (3) "Petitioner's Standing Objection to Future Amendments." On April 30, 2025, petitioner filed "Petitioner's Motion to Strike Improper Amendments Contained in Respondent's Response and to Enter Partial Judgment." On May 5, 2025, he filed "Petitioner's Motion for Entry of Final Judgment of Dissolution of Mariage."

¶ 8 On May 19, 2025, the trial court held a hearing on petitioner's filings. Petitioner said he wanted an immediate final judgment. Respondent appeared through Gieck and offered to take both the car and the associated debt. The court concluded too much confusion existed to enter an order immediately and set a June 30, 2025, hearing date.

¶ 9 On June 2, 2025, respondent filed a "Motion for Temporary Relief Pursuant to 750 ILCS 5/501," in which she asked the trial court to grant her interim attorney fees of $3,500. Respondent stated she had given Gieck a $2,000 retainer, which, because of the apparent simplicity of the case, Gieck expected would be sufficient to pay for respondent's representation. However,

because of the volume of petitioner's filings, respondent owed Gieck $1,120. Respondent further moved for sanctions under Illinois Supreme Court 137 (eff. Jan. 1, 2018) based on what she asserted were petitioner's meritless or false filings. "For example, on April 25, 2025, [petitioner] filed a Motion to Strike or Clarify Respondent's Answer to Question 11 of the Petition of Dissolution. *** [However, the] response to Question 11 repeats—*word for word*—the language in [the dissolution] Petition." (Emphasis in original.)

¶ 10        On June 3 and 4, 2025, petitioner filed three more documents, including a "Motion to Challenge and Oppose Respondent's Motions for Temporary Relief and Sanctions."

¶ 11        The trial court held a hearing to address petitioner's filings on June 11, 2025. He asked the court to consider his offer of a settlement, wherein he agreed to respondent's disposition of the car and further would agree to pay respondent's attorney fees if he could do so over 120 days, with $500 to be paid immediately and additional payments to be made every 30 days. Respondent accepted these terms.

¶ 12        The trial court allowed the parties to prove up the agreement on the spot. The court swore in both parties as witnesses. Both parties agreed they had irreconcilable differences and wished to have the marriage dissolved on the terms to which they had agreed. The court entered a judgment of dissolution of marriage incorporating the MSA, which memorialized the in-court agreement on fees.

¶ 13        On June 12, 2025, petitioner filed a motion seeking to "clarify" what would happen if respondent failed to comply with one term of the MSA. At a hearing on this motion, the trial court told petitioner it would address any noncompliance if it occurred and stated, "I would suggest don't file anything in regards to this until—unless there is some type of violation of the order."

¶ 14        On June 30, 2025, petitioner filed what on appeal he calls a "post-judgment relief

packet," which contained, *inter alia,* a "Request for Leave to File Post-Judgment Motion for Relief and Sanctions" (request for leave), a "Post-Judgment Motion for Relief and Sanctions" (postjudgment motion), and a "Motion to Compel Clarification of Representation Status and Basis of Attorney's Fees" (motion to compel). The motion was not presented as an attachment or exhibit to the request for leave. However, the request for leave asked the trial court to:

> "A. Grant leave to file the attached [request for leave] and all accompanying documentation, ***;
>
> B. Direct the Clerk to file the same *instanter*;
>
> C. Set the matter for hearing on July 14, 21, or 28, 2025 ***.""

¶ 15     In the postjudgment motion, petitioner asserted, *inter alia*, "Subsequent disclosures from Prairie State Legal Services ('PSLS')—which has since declined to represent Petitioner due to a conflict of interest—have led Petitioner to reasonably believe that Respondent's legal services were provided *pro bono*, rendering the attorney's fee representations materially misleading." He asked, *inter alia*, for the vacatur of the MSA and for sanctions against Gieck under Rule 137.

¶ 16     In the motion to compel, petitioner stated he went to PSLS on June 11, 2025, to seek postjudgment representation in this case and was advised PSLS could not represent him due to a conflict of interest. From this, he inferred, "Respondent has received or is receiving subsidized or *pro bono* legal assistance through [PSLS]." Petitioner stated he further inferred this representation was inconsistent with Gieck's statement to the trial court she was representing respondent under a retainer agreement.

¶ 17     The trial court did not address petitioner's request for leave or any other document in the postjudgment relief packet.

¶ 18     This appeal followed.

- 4 -

¶ 19                                        II. ANALYSIS

¶ 20            On appeal, petitioner asks us to vacate the award of attorney fees in the MSA. He

contends, because counsel did not offer any support for the fee request, the trial court abused its

discretion by awarding the fees. He further contends his agreement to pay $3,500 in fees was

"void" because counsel was representing respondent *pro bono*. He notes he raised his claim

counsel had lied about her fees in his motion to compel. However, he further notes that although

the clerk filed his postjudgment relief packet, the court never addressed his allegation of Gieck's

misconduct. He asserts, "The suppression of a motion directly aimed at clarifying the legitimacy

of the fee provision only compounds the [court's] abuse of discretion [in awarding attorney fees]."

¶ 21            Because respondent has declined to file a brief, our analysis of petitioner's claims

must follow the principles of *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill.

2d 128, 133 (1976), as we have expanded upon them in *Thomas v. Koe*, 395 Ill. App. 3d 570, 577

(2009). Under the *Talandis* principles, when we have only the appellant's brief, we may:

> "(1) *** serve as an advocate for the appellee and decide the case when the court
>
> determines justice so requires, (2) *** decide the merits of the case if the record is
>
> simple and the issues can be easily decided without the aid of the appellee's brief,
>
> or (3) *** reverse the trial court when the appellant's brief demonstrates
>
> *prima facie* reversible error that is supported by the record." *Koe*, 395 Ill. App. 3d
>
> at 577.

Here, the record is simple, and we can decide the merits of petitioner's claim without the aid of a

brief from respondent.

¶ 22                    A. The Trial Court Did Not Grant a Petition for Attorney Fees

¶ 23            Petitoner's claim the trial court abused its discretion by awarding attorney fees

- 5 -

without proper evidence fails because he *agreed to* the fee order. "[A]greed orders are effectively the parties' private contractual agreement," and, as a consequence, are " 'generally binding on the parties and cannot be amended or varied without the consent of each party.' " *Draper & Kramer, Inc. v. King*, 2014 IL App (1st) 132073, ¶ 28 (quoting *In re Marriage of Rolseth*, 389 Ill. App. 3d 969, 971 (2009)). Petitioner cites authority relating to courts' granting of fee petitions, but this authority is inapplicable here. Gieck's petition for interim fees became moot when petitioner agreed in court to pay the fees and agreed to include those fees in the MSA.

¶ 24        B. Petitioner Failed to Effectively File a Motion Challenging Attorney Fees

¶ 25        Petitioner failed to mount an effective postjudgment challenge to the fee agreement in the MSA. To be sure, a party may, within 30 days of the entry of an agreed order, seek to vacate the order by filing a motion under section 2-1301(e) of the Code of Civil Procedure (735 ILCS 5/2-1301(e) (West 2024)). *McNulty v. McNulty*, 2022 IL App (1st) 201239, ¶ 45. In such circumstances, the movant need only show "substantial justice was not achieved by the agreed order." (Internal quotation marks omitted.) *McNulty*, 2022 IL App (1st) 201239, ¶ 45. Petitioner's argument here can fairly be read as saying the trial court should have vacated the fee agreement because he presented evidence Gieck lied about what respondent owed her. But, as we next explain, petitioner failed to file a motion challenging the fees.

¶ 26        The core failure in petitioner's attempt to challenge the fee award was his failure to file a motion to do so. Petitioner complains of the trial court's "suppression" of his motion to compel, but the court had no reason to address the postjudgment relief packet containing this motion. The first document in the packet was the request for leave, which asked the court to order the clerk to file the other motions in the packet. The request for leave was a motion—a motion is simply "an application to the court for a ruling or an order in a pending case." *In re Marriage of*

*Sutherland*, 251 Ill. App. 3d 411, 413 (1993). However,

> "[u]nless a motion is brought to the attention of the court and the court is requested to rule on it, the motion is not effectively made. *** Merely filing the motion with the clerk of the court does not constitute a sufficient application. [Citation]. This rule is no different if the motion is filed *pro se*." *People v. Newman*, 211 Ill. App. 3d 1087, 1098 (1991).

Petitioner merely filed the packet containing the request for leave, without setting a time for the court to hear it or in any other way contacting the circuit clerk's office to secure a hearing date and provide notice. He did not otherwise bring the packet to the court's attention. Thus, not only was the motion to compel (or postjudgment motion) never filed pursuant to the request for leave, but the request for leave was itself not filed effectively.

¶ 27        We note that even assuming, *arguendo*, petitioner had succeeded in filing his postjudgment motion and motion to compel, his claim the attorney fee agreement was the result of fraudulent misrepresentation was fatally flawed. Everything in the record indicates respondent was represented by Gieck, whose filings consistently stated she was affiliated with H.J. Dane Law Office. Nevertheless, petitioner, based only on his allegation PSLS declined to represent him due to a conflict of interest, makes the cavernous leap in logic to ask the trial court to conclude respondent's representation in the divorce was provided by PSLS. Petitioner offered no evidence suggesting a connection between Gieck and PSLS. The fact an attorney has a conflict of interest as to a new prospective client does not show they represented another client in the matter. See, *e.g.*, Ill. R. Pro. Conduct (2010) R. 1.18 (eff. Jan. 1, 2016) (setting out when consultation with a prospective client can create a conflict of interest barring representation of another client due to information disclosed by the prospective client). Thus, the basis for petitioner's claim Gieck was

working *pro bono* was merely an implausible inference.

¶ 28                           III. CONCLUSION

¶ 29          For the reasons stated, we affirm the trial court's judgment.

¶ 30          Affirmed.